UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUENTIN M. BROWN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> APL MARITIME LTD., et al., <br><br> Defendants. | Case No. 22-cv-06999-DMR <br><br> **ORDER ON DEFENDANTS' MOTIONS TO DISMISS, TO STRIKE, AND FOR A MORE DEFINITE STATEMENT** <br><br> Re: Dkt. Nos. 35, 51 |

Defendant APL Marine Services Ltd. ("APL") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Quentin M. Brown's first amended complaint ("FAC").[1] Defendant Yasin Berber moves to dismiss the FAC's fifth and sixth claims for intentional and negligent infliction of emotional distress. He also moves pursuant to Federal Rules of Civil Procedure 12(e) and 12(f) to strike or obtain a more definite statement as to the FAC's third claim for sexual assault, sexual battery, and sexual harassment. The court held a hearing on May 31, 2023. For the reasons stated below, APL and Berber's motions to dismiss are granted in part and denied in part. Berber's motion for a more definite statement is granted. The motion to strike is denied as moot.

**I.   BACKGROUND**

Brown makes the following allegations in the FAC, all of which are taken as true for purposes of the motions to dismiss.[2] On or about November 21, 2021, Brown began working as a

---

[1] Defendants APL Maritime Ltd., American President Lines, LLC, CMA CGM (America) LLC, and CMA-CGM S.A. originally joined in Defendant APL's motion to dismiss. However, on April 6, 2023, the parties agreed to dismiss without prejudice all Defendants except APL and Yasin Berber. [Docket Nos. 49, 50.]

[2] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

1  seaman and wiper aboard the M/V President Wilson. FAC ¶ 54. Three days later, Defendant
2  Yasin Berber, a reefer technician aboard the ship, began subjecting Brown to "relentless,
3  exhausting and damaging emotional and physical advances." *Id.* ¶¶ 65, 68. Specifically, Berber's
4  conduct included "gawking [Brown] in a sexually suggestive manner," "panting, pinching, or
5  intentionally rubbing against [Brown]," "making sexual gestures," "unwelcome sexual advances,"
6  "sexual or suggestive comments," "suggestive gazes or sneers," "blocking [Brown]'s way through
7  doors," and "sexual physical contact against [Brown]'s will." *Id.* ¶ 69. Brown alleges that a week
8  later, on December 2, 2021, Berber "shoved his hand down [Brown]'s pants, forcibly inserting a
9  finger inside [his] anal area" without consent. *Id.* ¶ 70.

10        Throughout his tenure aboard the vessel, Brown was supervised by several managers,
11  including First Assistant Engineer Juan Carlos Roberts, Chief Engineer Paul Hudson, Captain Paul
12  Sallee, and Captain Mark Remijan. FAC ¶¶ 57-60. Brown alleges that these supervisors had the
13  power to promote, demote, fire, approve raises, and set schedule and hours for himself and Berber.
14  *Id.* According to Brown, these supervisors knew or should have known about Berber's conduct
15  but nevertheless assigned Brown to work in close proximity to Berber. *Id.* ¶¶ 67, 72. Brown
16  claims that supervisors and crewmembers witnessed Berber's improper interactions, harassment,
17  and unwelcome advances to Brown in the coffee room and at the ship's mess hall. *Id.* ¶¶ 72.

18        Brown alleges that he reported the December 2, 2021 incident to Chief Engineer Paul
19  Hudson, but Hudson failed to file a report, investigate the allegations, or otherwise take any
20  corrective measures. *Id.* ¶ 76. When Brown followed up with Hudson on December 14, 2021, he
21  alleges that he was discouraged from filing a complaint against Berber. *Id.* ¶ 80. According to
22  Brown, Hudson willingly ignored or failed to take his reporting seriously because of Brown's sex;
23  that is, because Brown, a male, reported workplace harassment, sexual assault, and rape by Berber,
24  another male. *Id.* ¶¶ 77, 81. For the remainder of his employment aboard the M/V President
25  Wilson, Brown alleges that he was a victim of retaliatory harassment. *Id.* ¶ 79.

26        Brown alleges that a day after the incident, he reported in writing to Captain Paul Sallee
27  that Hudson was mishandling his complaints. FAC ¶ 82. Shortly thereafter, on December 16,
28  2021, Brown and Hudson were summoned to meet with Sallee. *Id.* ¶ 83. On their way to the

United States District Court
Northern District of California

meeting, Hudson threatened to retaliate against Brown, stating that upon the vessel's return to Oakland, California, Brown's position would be eliminated. *Id.* During the meeting itself, Sallee stated that he had lost Brown's written report. *Id.* ¶ 85. Like Hudson, Sallee failed to investigate Brown's allegations or take any corrective measures against Berber. *Id.* ¶ 86. On the same day, Brown asserts that he submitted his complaints by e-mail to the designated shoreside supervisor, Captain Mark Remijan, who also failed to act on Brown's allegations. *Id.* ¶¶ 87, 88. According to Brown, his complaints were not addressed at any time between December 16, 2021 and January 2, 2022;[3] instead, he experienced retaliation and verbal attacks by crewmembers. *Id.* ¶¶ 89-90.

On January 2, 2022, Brown met with Captain Paul Sallee for the second time. FAC ¶ 91. Sallee explained that he had spoken to the personnel department, who agreed that Brown should take a psychological evaluation – booked and paid for by Brown – "in order to make the next voyage." *Id.* Sallee also stated that Brown "did not fit the dynamics of the ship" and informed him that Berber would remain on the ship. *Id.* Sallee reiterated that Brown did not fit the ship's dynamics on January 10, 2022. *Id.* ¶ 92. Brown claims that he was constructively discharged as a result of supervisors' and crewmembers' actions. *Id.* ¶ 93.

Brown filed the complaint against Defendants on November 8, 2022, and the operative complaint on March 1, 2023. [Docket Nos. 1, 28.] Brown alleges five claims against APL: (1) negligence under the Jones Act, 46 U.S.C. § 30104 et seq.; (2) unseaworthiness; (3) discrimination, retaliation, and malicious acts in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. APL now moves to dismiss all claims.

Brown also asserts three claims against Berber: (1) intentional tort of sexual assault, sexual battery, and sexual harassment; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. Berber moves to dismiss Brown's claims for intentional infliction of emotional distress and negligent infliction of emotional distress, and to strike Brown's claim for

---

[3] The complaint identifies the date as "December 16, 2022." FAC ¶ 89. Brown's opposition to APL Marine Services' motion to dismiss clarifies that this is a typographical error. Opp'n to APL's MTD at 16.

3

1   intentional tort of sexual assault, sexual battery, and sexual harassment.  If Brown files a second
2   amended complaint, Berber seeks an order requiring Brown to provide a more definite statement
3   as to that claim.

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001)*, overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A matter is "immaterial" when it "has no essential or important relationship to the claim for relief or the defenses being pleaded, while '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial, and such a motion may be appropriate where it will streamline the ultimate resolution of the action. *Fantasy*, 984 F.2d at

1527–28.  "A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019) (citing *Fantasy*, 984 F.2d at 1528).  "Motions to strike are regarded with disfavor [ ] because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) (quotation omitted).  "The grounds for a motion to strike must appear on the face of the pleading under attack," and "the Court must view the pleading under attack in the light more favorable to the pleader when ruling upon a motion to strike." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489 (C.D. Cal. 2014) (citations omitted).

Federal Rule of Civil Procedure 12(e) provides that "a party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response."  These motions are "disfavored and rarely granted" unless "the complaint is so indefinite that the Defendant cannot ascertain the nature of the claim being asserted." *U.S. v. Ragan*, No. CV 10-7654 RSWL (MANx), 2011 WL 2940354, at *2 (C.D. Cal. July 21, 2011).  In other words, Rule 12(e) may apply where the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999) (internal quotation marks and citation omitted).

### III.  DISCUSSION

#### A.  APL's Motion to Dismiss

##### 1.  Negligence under the Jones Act

Brown's first claim is for negligence under the Jones Act, 46 U.S.C. § 30104 et seq. Under the Jones Act, seamen rights parallel those of railway employees under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. § 30104. *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 662 n. 5 (9th Cir. 2009).  Section 51 of the FELA provides, in relevant part, that "[e]very common carrier by railroad . . . shall be liable in damages . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

5

To prevail on a Jones Act negligence claim, a plaintiff must prove the following elements: "duty, breach, notice and causation." *Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F.3d 658, 662 (9th Cir. 1997) (citing *Havens v. F/T Polar Mist*, 995 F.2d 215, 218 (9th Cir. 1993)). At the hearing, APL clarified that it only challenges the notice element.

To establish notice under the Jones Act, a plaintiff must establish that "the employer or its agents either *knew* or *should have known* of the dangerous condition" at issue. *Ribitzki*, 111 F.3d at 663 (emphasis in original) (citing *Havens*, 996 F.2d at 218; *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1543 (11th Cir. 1989); *Williams v. Tide Water Associated Oil Co.*, 227 F.2d 791, 794 (9th Cir. 1956)).

Brown's position appears to be that APL's agents—supervisors aboard the M/V President Wilson—had actual and constructive knowledge of Berber's harassment prior to the December 2, 2021 incident. Brown's Opp'n to APL's Mot. at 20-21. Brown asserts that this knowledge is imputed to APL. *Id.* at 21. He points to two specific allegations in the FAC in support of his argument. *Id.* at 20-21. First, the FAC alleges that "[c]rewmembers aboard the M/V PRESIDENT WILSON, including A.B. Abdulalah Mohamed, later promoted to Bosun, and other supervisors, witnessed [Berber]'s improper interactions, harassment, and unwelcome advances to the Plaintiff, at the Coffee Room located in the vessel's Sailors' Deck." FAC ¶ 72(a). Second, "[c]rewmembers aboard the M/V PRESIDENT WILSON, including Alexander Reyer and Giancarlo Thomae, and other supervisors, witnessed [Berber]'s improper interactions, harassment, and unwelcome advances to the Plaintiff, at the ship's mess hall." *Id.* ¶ 72(b).

According to APL, Brown does not allege that he reported any of Berber's alleged conduct prior to December 2, 2021, and in any event, the December 2, 2021 incident was a "single unrepeated instance," which does not show that APL provided an unsafe working environment. APL's Mot. at 11. In response to Brown's allegations, APL asserts that none of the acts described in the FAC—which APL characterizes as "glances and sexually suggestive comments"—are sufficient to put "anyone on notice of a propensity to commit a violent act[.]" APL's Reply at 3 (citing *Ribitzki*, 111 F.3d at 662). APL also challenges Brown's statement that APL may be held vicariously liable for Berber's conduct. *See* APL's Mot. at 11. APL asserts that, to establish

6

1 vicarious liability, Brown must show that Berber acted within the scope of his employment and in
2 furtherance of APL's business. *Id.* According to APL, sexual harassment and assault are not
3 conduct within the scope of employment. *Id.* at 11-12.

4       A shipowner may be liable for a crewman's injuries under two different theories of
5 liability. First, if the assault was committed by the crewman's superior for the benefit of the ship's
6 business; this is referred to as *respondeat superior* liability. *See Walters v. Moore-McCormack*
7 *Lines, Inc.*, 309 F.2d 191, 195 (2d Cir. 1962); *Lykes Bros. S.S. Co. v. Grubaugh*, 128 F.2d 387,
8 391 (5th Cir. 1942), *modified,* 130 F.2d 25 (5th Cir. 1942). Second, if the ship's officers failed to
9 prevent a foreseeable assault. *See Stechcon v. United States,* 439 F.2d 792, 793 (9th Cir. 1971);
10 *see also Miles v. Melrose*, 882 F.2d 976, 983–84 (5th Cir. 1989), *aff'd sub nom. Miles v. Apex*
11 *Marine Corp.*, 498 U.S. 19 (1990) ("Establishing shipowner negligence in assault cases normally
12 requires evidence supporting either of the following propositions: 1) that the assault was
13 committed by the plaintiff's superior for the benefit of the ship's business, or 2) that the master or
14 ship's officers failed to prevent the assault when it was foreseeable.").

15       As to the first theory of liability, the FAC alleges that Berber was an "agent, apparent
16 agent, servant, borrowed servant and employee of [APL] . . . [a]ct[ing] within the scope of his
17 employment and agency relationship with APL" during his interactions with Brown. *See* Brown's
18 Opp'n to APL's Mot. at 20 n.11 (citing FAC ¶¶ 33-45). As APL points out, in the context of
19 assaults on shipboards, "the employer may be liable under the Jones Act only when the assault is
20 committed by one having authority over the person assaulted and then only when it is committed
21 in the course of the conduct of the master's business." *Lykes Bros. S. S. Co.*, 128 F.2d at 391.
22 Brown does not respond to this argument in his opposition brief, thereby conceding the point.

23       With respect to the second theory of liability, the court is not persuaded by APL's position
24 that none of the acts alleged are sufficient as a pleading matter to establish that APL or its agents
25 knew or should have known that Berber had a propensity toward violence. Notwithstanding
26 APL's attempt to recast Berber's alleged conduct as mere "glances and sexually suggestive
27 comments," the FAC is clear that Berber's conduct between November 24, 2021 and December 2,
28 2021 included: "gawking [Brown] in a sexually suggestive manner," "panting, pinching, or

intentionally rubbing against [Brown]," "making sexual gestures," "unwelcome sexual advances," "sexual or suggestive comments," "suggestive gazes or sneers," "blocking [Brown]'s way through doors," and "sexual physical contact against [Brown]'s will." *Id.* ¶ 69. APL's argument also ignores allegations in the FAC asserting that Brown's supervisors witnessed Berber's improper interactions, harassment, and unwelcome advances prior to December 2, 2021 – both in the coffee room located on the sailors' deck and in the ship's mess hall. *See* FAC ¶ 72.

APL does not explain why these allegations are insufficient to establish that the officers failed to prevent a foreseeable assault. *See Stechcon,* 439 F.2d at 793. It does not cite any authority for its suggestion that the conduct described is insufficient to put supervisors on notice that Berber presented "a dangerous condition." Nor does APL provide any support for its position that Brown was required to report the alleged conduct prior to December 2, 2021 in order to sustain a claim under the Jones Act.[4]

Accordingly, the court finds that the FAC sufficiently pleads the element of notice under the Jones Act and denies APL's motion to dismiss the Jones Act claim on that ground.

### 2. Unseaworthiness

Brown asserts a claim for unseaworthiness on grounds that Berber committed sexual harassment, sexual assault, sexual battery, and rape onboard the M/W President Wilson. The doctrine of unseaworthiness requires a shipowner "'to furnish a vessel and appurtenances reasonably fit for their intended use.'" *Faraola v. O'Neill*, 576 F.2d 1364, 1366 (9th Cir. 1978) (quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)). The shipowner's actual or constructive knowledge of an unseaworthy condition is not essential to its liability. *Ribitzki*, 111 F.3d at 664 (citing *Mitchell*, 362 U.S. at 549).

"[T]he warranty of seaworthiness extends to the crew as well as the ship and . . . the owner warrants that the crew, although not necessarily competent to meet all contingencies is equal in

---

[4] To the extent APL argues that the alleged refusal to discipline and/or dismiss Berber cannot be considered the cause of Brown's injuries because it occurred after the December 2, 2021 incident, this misstates Brown's position. *See* APL's Mot. at 11. The FAC alleges that several supervisors witnessed Berber's harassment and tolerated a hostile work environment *prior* to the December 2, 2021 incident. *See* FAC ¶¶ 72-73. The FAC alleges that, as a result of the supervisors' failure to correct the harmful conditions, Brown suffered "severe and permanent harm." *Id.* ¶ 114.

disposition and seamanship to the ordinary men in the calling.'' *Peterson v. United States*, 224 F.2d 748, 750 (9th Cir. 1955) (citation and internal quotation marks omitted). Courts ask whether the crew member's behavior was "within the usual and customary standards of the calling," or whether it was "a case of a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature." *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1096 (C.D. Cal. 2015), *aff'd,* 694 F. App'x 585 (9th Cir. 2017) (quoting *Boudoin v. Lykes Bros. Steamship Co.*, 348 U.S. 336, 340 (1955)). A crewman's savage and vicious nature may be inferred from the nature of the assault or by evidence of prior vicious conduct. *See Walters v. Moore-McCormack Lines, Inc.*, 309 F.2d 191, 193 (2d Cir. 1962). The question of unseaworthiness is generally left to a factfinder. *Jordan v. United States Lines, Inc.*, 738 F.2d 48, 50 (1st Cir. 1986).

APL contends that the allegations in this case are akin to those in *Russo v. APL Marine Servs., Ltd.*, where the court dismissed the plaintiff's claim for unseaworthiness at the summary judgment stage. *Russo*, 135 F. Supp. 3d at 1097. In *Russo*, a male vessel captain was alleged to have slapped the buttocks of a female vessel cook after she ended their consensual relationship. *Id.* The court found that, without more, the captain's actions were not "savage and vicious conduct" that would make the vessel a "perilous place," and thus did not constitute a breach of warranty of seaworthiness. *Id.*

For his part, Brown points to several cases in which courts have found shipowners liable for injuries caused by an assault. *See* Brown's Opp'n to APL's Mot. at 23-28. All of them are factually distinguishable because they involved weapons as opposed to incidents of sexual harassment or sexual assault. Brown highlights two cases in particular: *Boudoin v. Lykes Bros. Steamship Co.*, 348 U.S. 336, 340 (1955) and *Pashby v. Universal Dredging Corp.*, 608 F.2d 1312 (9th Cir. 1979). In *Boudoin*, the plaintiff was awakened by a drunken seaman looking for a bottle of brandy under plaintiff's bed. 348 U.S. at 337. When the plaintiff awoke, the seaman attacked him with the bottle. *Id.* After the attack, the assailant returned with a knife which he also intended to use on plaintiff. *Id.* at 338. On the heels of the assault, the assailant continued to be belligerent and disobey orders, resulting in his being placed in irons, and eventually discharged by the captain. *Id.* The district court found in favor of the plaintiff, reasoning that the evidence indicated

9

that the assailant was "a person of dangerous propensities and proclivities." *Id.* The Supreme Court agreed, noting that there was sufficient evidence to justify the district court's holding that the assailant had "crossed the line, that he had such savage disposition as to endanger the others who worked on the ship . . . [that] he was not equal in disposition to the ordinary men of that calling and that the crew with [him] as a member was not competent to meet the contingencies of the voyage." *Id.* at 341.

In the second case cited by Brown, *Pashby v. Universal Dredging Corp.*, a deckhand approached the plaintiff from the rear and battered him with an 18-inch eye bolt, causing head, leg, and hand injuries. 608 F.2d at 1313. The Ninth Circuit explained that "[a]n attack with a dangerous weapon has frequently been found to be evidence of a wicked and dangerous disposition." *Id.* at 1314. The court concluded that the nature of the assault raised factual questions not properly resolved at summary judgment. *Id.*

The remaining cases cited by Brown similarly involve attacks with deadly weapons. *See* Brown's Opp'n to APL's Mot. at 28 (citing *Deakle v. John E. Graham & Sons*, 756 F.2d 821 (11th Cir. 1985) (stabbing); *Calcagni v. Hudson Waterways* Corp., 603 F.2d 1049 (2d Cir. 1979) (wheel wrench); *Smith v. Lauritzen*, 356 F.2d 171 (3d Cir. 1966) (cargo hooks); *Horton v. Moore-McCormack Lines, Inc.*, 326 F.2d 104 (2d Cir. 1964) (broken glass and bottle); *Clevenger v. Star Fish & Oyster Co.*, 325 F.2d 397 (5th Cir. 1963) (four-foot-long pointed steel ice chisel); *Kelcey v. Tankers Co.*, 217 F.2d 541 (2d Cir. 1954) (previous incidents involving knife and axe)).

Cases involving allegations of sexual harassment and sexual assault are more instructive. For example, in *Williams v. Treasure Chest Casino, L.C.C.*, No. 95–3968, 1998 WL 42586 (E.D. La. Feb. 3, 1998), the plaintiff alleged that her supervisors and co-workers made unwelcome sexual advances, requested sexual favors, and engaged in other verbal and physical conduct. 1998 WL 42586, at *1. She alleged, in part, that she was told by one supervisor that another supervisor gave permission to "f___ her." *Id.* At summary judgment, the court held that "[a]lthough plaintiffs' allegations are serious, and the harassing behavior they describe cannot be condoned . . . the alleged conduct would not support an unseaworthiness claim under applicable legal standards." *Id.* at *8. This is because "[i]n those assault cases in which the issue of

10

1  unseaworthiness has been held properly submissible to a jury, the hallmark has been either an
2  assault with a deadly weapon or independent evidence of the assailant's exceptionally quarrelsome
3  nature, his habitual drunkenness, his severe personality disorder, or other similar factors." *Id.*
4  (quoting *Walters v. Moore–McCormack Lines*, Inc., 309 F.2d 191, 193 (2d Cir. 1962)).

5  In *Ballance v. Energy Transp. Corp.*, No. 00 CIV. 9180 (LMM), 2001 WL 1246586, at *1
6  (S.D.N.Y. Oct. 18, 2001), the court considered plaintiff's unseaworthiness claim based on
7  allegations of provocative comments, sexual content and innuendo, non-consensual touching of
8  her buttocks, and phrases indicating a desire to engage in sexual intercourse and/or other sexual
9  activity. 2001 WL 1246586, at *1-2. The district court dismissed plaintiff's claims at summary
10 judgment. In support, the court stated that it was "aware of no case, nor does plaintiff present one,
11 in which alleged sexual harassment aboard a vessel, even that which involves possible physical
12 contact, survived a summary judgment motion." *Id.* at *7.

13 The allegations in this case – that Berber "forcibly insert[ed] a finger inside [Brown]'s anal
14 area" – differ from those in *Russo*, *Williams*, and *Ballance*. While those cases examined
15 allegations of sexual harassment, Brown alleges—and his counsel represented to the court at the
16 hearing—that the December 2, 2021 incident amounted to a rape. *See* FAC ¶ 71. Taking those
17 allegations as true, the question becomes whether a rape falls "within the usual and customary
18 standards of the calling," or whether it is "a case of a seaman with a wicked disposition, a
19 propensity to evil conduct, a savage and vicious nature." *See Russo*, 135 F. Supp. 3d at 1096. In
20 light of the very nature of Berber's assault, the court finds that the behavior does not fall "within
21 the usual and customary standards of the calling." *See Boudoin*, 348 U.S. at 340.

22 APL's motion to dismiss the unseaworthiness claim is denied.

### 3. Title VII

24 Brown brings a Title VII claim against APL for "Discrimination, Retaliation, and
25 Malicious Acts." In his opposition and at the hearing, Brown clarified that the FAC alleges claims
26 for sex discrimination and retaliation under Title VII.[5] *See* Brown's Opp'n to APL's Mot. at 29.

---

[5] In its opening brief, APL requests a court order instructing Brown to separate his claims for discrimination and retaliation. APL's Mot. at 14. The court agrees. If Brown files a second

11

### a. Sex Discrimination

To state a claim for employment discrimination based on sex, Brown must allege that (1) he is a member of a protected class, (2) he was performing his job in a satisfactory manner, (3) he suffered an adverse employment action, and (4) he was treated differently than similarly situated persons outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Brown clarified his claim at the hearing. He described the "macho culture" aboard the M/V President Wilson and the ways in which this type of "male-dominated environment" allows for sexual crimes to be "brushed off." In that context, Brown alleges that he was discriminated against on the basis of being a male.

APL moves to dismiss this claim because Brown fails to allege the third and fourth elements. *See* APL's Mot. at 15. As to the third element, an adverse employment action for discrimination claim "is one that 'materially affect[s] the compensation, terms, conditions, or privileges" of employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000)). Adverse employment actions do not extend, however, to rude or offensive comments or mere ostracism. *Blount v. Morgan Stanley Smith Barney LLC*, 982 F. Supp. 2d 1077, 1082 (N.D. Cal. 2013), *aff'd,* 624 F. App'x 965 (9th Cir. 2015) (citing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112–13 (9th Cir. 2000) (finding that the plaintiff did not suffer an adverse employment action when she was repeatedly mocked and treated with hostility)).

In the FAC, Brown alleges that he was constructively discharged as a result of his supervisors' and other crewmembers' actions. FAC ¶ 93. Brown does not rely on this allegation in his opposition; instead, he highlights that Chief Engineer Paul Hudson threatened to retaliate against him on their way to meeting with Captain Paul Sallee, stating that his position would be eliminated upon the ship's return to Oakland, California. Brown's Opp'n to APL's Mot. at 13 (citing FAC ¶ 83). He explains that "[t]his is a significant adverse consequence, because in the

---

amended complaint, he must plead his claims for discrimination and retaliation separately.

maritime container shipping industry seafarers work on ships on limited contracts tied to particular itineraries and voyages. If shoreside and shipboard management eliminate a position, that seaman's contract will not be renewed for subsequent voyages." *Id.* (citing FAC ¶ 83).

The court agrees with APL that this allegation is insufficient to establish that Brown was subject to an adverse employment action for purposes of his discrimination claim. Although Brown alleges that he was told that his position would be eliminated when the ship returned to port, he does not assert that he was in fact terminated. In addition, Brown does not allege that his job duties were "materially affect[ed]." *See Davis*, 520 F.3d at 1089. He does not claim, for example, that he was "assign[ed] more, or more burdensome, work responsibilities," or that he was "ban[ned] from an important area of the workplace." *See id.* at 1089-90.

To the extent Brown avers that he suffered an adverse employment action because he was constructively discharged, that argument also fails. To establish constructive discharge, a plaintiff must show 1) "working conditions so intolerable that a reasonable person would have felt compelled to resign," *Penn. State Police v. Suders*, 542 U.S. 129, 148 (2004), and 2) that he actually resigned. *Green v. Brennan*, 578 U.S. 547, 555 (2016). The Ninth Circuit has "set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). As pled, the FAC does not allege that Brown resigned from his employment, nor does it contain sufficient facts to otherwise support a claim for constructive discharge.[6]

Accordingly, APL's motion to dismiss Brown's Title VII claim based on sex discrimination is granted.

---

[6] Brown's claim that he was treated differently than similarly situated persons outside the protected class is also lacking. Brown points to the following allegation in support of his argument: "Plaintiff anticipates discovery will reveal that Defendants shoreside and shipboard employees with managerial responsibilities have acted upon and addressed complaints of sexual assault and battery by female employees differently – acting on the reports, investigating the allegations, disciplining the perpetrators, and implementing policies and procedures to protect employees from workplace sexual harassment, assault and battery." FAC ¶ 78. As the court explained at the hearing, Brown's sole allegation in this respect is speculative.

### b. Retaliation

APL also moves to dismiss Brown's claim for unlawful retaliation in violation of Title VII. Title VII provides in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

APL argues that Brown has not stated a claim for retaliation because he does not allege that he suffered an adverse employment action. APL's Mot. at 17-18. APL only states in a conclusory way that "[a]s established, Brown has not been subject to an adverse employment action." APL's Mot. at 18.

The definition of adverse employment action for retaliation claims is broader than that which applies to discrimination claims. Brown need only show that the alleged retaliatory act "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The adverse employment action need not be severe. *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1239 (9th Cir. 1999); *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir. 1991) (the plaintiff "need not show that she was fired, demoted or suffered some financial loss as a result" of the employer's action to state a retaliation claim).

Here, Brown alleges that after making sexual harassment and assault complaints, he "experienced retaliation and verbal attacks by fellow crewmembers[.]" FAC ¶ 90. For example, one crewmember confronted Brown, "calling him a 'homophobe' for reporting the abuse, harassment and rape" and telling him that he "was 'going to turn the ship against him.'" *Id.* ¶ 90(b). Brown further asserts that at his second meeting with Captain Paul Sallee, Sallee explained

that he had spoken to the personnel department, who agreed that Brown should take a psychological evaluation – booked and paid for by Brown – "in order to make the next voyage." *Id.* ¶ 91. Sallee also stated that Brown "did not fit the dynamics of the ship" and informed him that Berber would remain on the ship. *Id.* APL does not explain how Brown's allegations fail to satisfy the broader definition of adverse employment action for retaliation claims.

Accordingly, the motion to dismiss Brown's retaliation claim is denied.

### 4. Intentional Infliction of Emotional Distress

As a preliminary matter, the parties' briefs do not discuss whether federal maritime law – as opposed to California law – applies to Brown's tort claims. A tort claim falls within the admiralty jurisdiction of the federal courts if it satisfies both "a location test and a connection test." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1126 (9th Cir. 2009) (citation omitted). First, the tort must occur on or over navigable waters. *Id.* Second, the actions giving rise to the tort claim must "bear a significant relationship to traditional maritime activity." *Id.* At the hearing, the parties agreed that federal maritime law applies to Brown's claim for intentional infliction of emotional distress.

The Ninth Circuit has recognized that there is no established standard for evaluating a claim for intentional infliction of emotional distress; instead, this circuit has applied the Restatement (Second of Torts) to evaluate these claims. *See Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002). Section 46 of the Restatement states in relevant part: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Comment d elaborates:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*. Generally, the case is one in which the recitation of the

15

|   |   |
|---|---|
| 1 | facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" |

*Wallis*, 306 F.3d at 842 (emphasis in original) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Brown asserts that he has pled dozens of specific actions rising to a sufficient level of indecency:

> 1) Yasin Berber's relentless and damaging physical advances of a sexual nature from November 25, 2021 through December 2, 2021 (FAC ¶¶ 68, 69); 2) Yasin Berber's continually harassing and victimizing Plaintiff in front of supervisor Abdulalah Mohamed at the Coffee Room on the Sailor's Deck (FAC ¶72); 3) Yasin Berber's continually harassing and victimizing Plaintiff in front of supervisors Alexander Reyer and Giancarlo Thomae at the ship's mess hall (FAC ¶72); 4) Yasin Berber's committing an aggravated sexual battery on Plaintiff on December 2, 2021 (FAC ¶ 70); 5) reporting the incidents to Chief Engineer Paul Hudson, Captain Paul Sallee and Captain Mark Remijan, who failed to act and continue to force Plaintiff to work alongside Yasin Berber. (FAC ¶¶ 86-88)

Brown's Opp'n to APL's Mot. at 33.

APL contends that the FAC does not plausibly allege any conduct by APL itself – as opposed to Berber – that rises to the level of "extreme or outrageous" conduct. APL's Mot. at 18; Reply at 5-6. It argues that to state a claim against APL, Brown must allege that "either the work environment or [APL]'s conduct following notice of the alleged assault was extreme and outrageous." APL's Mot. at 18 (citing *Alioto v. Associated Exch. Inc.*, 482 F. App'x 222, 224 (9th Cir. 2012) (applying Arizona law); *Dawson v. Entek Int'l*, 630 F.3d 928, 941 (9th Cir. 2011) (applying Oregon law). Brown does not address this argument in his opposition brief.

At the hearing, Brown explained that he relies on general agency principles to hold APL liable for Berber's actions. He pointed to *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014), where the Eleventh Circuit examined whether a passenger may hold a shipowner vicariously liable for the medical negligence of the ship's employees. In doing so, the court explained that "[m]aritime law has long incorporated the concept of respondeat superior," and "agency principles to impute liability in maritime tort cases" have been applied across the federal circuits. 772 F.3d at 1234-35 (collecting cases). As the court understands it, Brown's position is that APL is liable for Berber's actions because Berber acted "during the course and scope of his

16

1     employment . . . and during the course and scope of his agency relationship with APL." *See* FAC
2     ¶¶ 68, 70.
3           Like the Eleventh Circuit, the Ninth Circuit has held that federal maritime law "embraces
4     the principles of the law of agency." *Stevens Tech. Services, Inc. v. S.S. Brooklyn*, 885 F.2d 584,
5     589 (9th Cir. 1989). In turn, courts have adopted the Restatement of the Law of Agency as an
6     accurate statement of applicable general agency principles in maritime law cases. *Id.*; *see also W.*
7     *Challenger, LLC v. DNV GL Grp.,* No. C16-0915-JCC, 2017 WL 6611701, at *3 (W.D. Wash.
8     Dec. 27, 2017), *aff'd sub nom. W. Challenger, LLC v. Seymour*, 765 F. App'x 369 (9th Cir. 2019)
9     (applying Restatement (Third) of Agency); *Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1188,
10    1212 (D. Alaska 2022). Under the Restatement (Third) of Agency "[a]n employee acts within the
11    scope of employment when performing work assigned by the employer or engaging in a course of
12    conduct subject to the employer's control. An employee's act is not within the scope of
13    employment when it occurs within an independent course of conduct not intended by the
14    employee to serve any purpose of the employer."
15          At the hearing, APL responded that sexual harassment and assault are not conduct within
16    the scope of employment. *Id.* at 11-12. The cases APL relies on in briefing do not examine this
17    question. In addition, neither applies maritime law or the Restatement of the Law of Agency.
18    While APL proffers cases for the proposition that sexual harassment and assault are not conduct
19    within the scope of employment in support of its motion to dismiss Brown's negligence claim
20    under the Jones Act, *see* APL's Mot. at 11-23, none of those cases examine agency liability in the
21    context of a claim for intentional infliction of emotional distress.
22          As the moving party, APL has not met its burden of persuasion under Federal Rule of Civil
23    Procedure 12(b)(6). Accordingly, the motion to dismiss Brown's claim for intentional infliction of
24    emotional distress against APL is denied without prejudice to APL raising the challenge at
25    summary judgment on a fuller legal and factual record.
26          **5. Negligent Infliction of Emotional Distress**
27          APL moves to dismiss Brown's sixth claim on the basis that "[u]nder California state law,
28    there is no independent tort of negligent infliction of emotional distress." APL's Mot. at 18 (citing

*Duste v. Chevron Prod. Co.*, 738 F. Supp. 2d 1027, 1040 (N.D. Cal. 2010)). As previously discussed, APL does not explain why California law as opposed to general maritime law governs Brown's negligent infliction of emotional distress claim. At the hearing, the parties agreed that maritime law applies.

Under federal maritime law, a plaintiff seeking to recover for negligent infliction of emotional distress must satisfy the "zone of danger" test set forth in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010); *see also Russo*, 135 F. Supp. 3d at 1097. Under this test, negligent infliction of emotional distress is committed by a defendant subjecting a plaintiff to emotional harm within the "zone of danger" created by the conduct of the defendant. *Id.* (citing *Gottshall*, 512 U.S. at 547-48). The "zone of danger" test allows recovery for "those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Gottshall*, 512 U.S. at 547-48.

As APL fails to analyze Brown's claim for negligent infliction of emotional distress under the applicable legal standards, the motion to dismiss that claim is denied without prejudice.

### B. Defendant Yasin Berber's Motion

#### 1. Motion to Dismiss

##### a. Negligent Infliction of Emotional Distress

In his opposition brief, Brown agrees to voluntarily dismiss his claim for negligent infliction of emotional distress against Berber. Opp'n to Berber's MTD at 14. Accordingly, that claim is dismissed.

##### b. Intentional Infliction of Emotional Distress

Berber moves to dismiss Brown's claim for intentional infliction of emotional distress because the FAC fails to allege any conduct that could be found by a reasonable jury to be sufficiently "extreme or outrageous" to support a claim under general maritime law. Berber's Mot. at 8.

The FAC alleges numerous actions which Brown contends rise to a sufficient level of indecency:

> 1) Defendant BERBER's relentless and damaging physical advances of a sexual nature from November 25, 2021 through December 2, 2021 (FAC ¶¶ 68, 69); 2) Defendant BERBER continually harassing and victimizing Plaintiff in front of supervisor Abdulalah Mohamed at the Coffee Room on the Sailor's Deck (FAC ¶72); 3) Defendant BERBER continually harassing and victimizing Plaintiff in front of supervisors Alexander Reyer and Giancarlo Thomae at the ship's mess hall (FAC ¶72); 4) Defendant BERBER's committing an aggravated sexual battery on Plaintiff on December 2, 2021 (FAC ¶ 70).

Brown's Opp'n to Berber's Mot. at 13-14.

According to Berber, these allegations are "a far cry from conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* As to the December 2, 2021 incident, Berber contends that the FAC alleges that he "insert[ed] a finger inside Plaintiff's anal *area*" (emphasis in original) – not that "anything was actually inserted into and penetrated Plaintiff's anus[.]" *Id.* at 9.

Berber does not cite any authority for his argument that allegations of sexual harassment and battery are insufficient to establish a claim for intentional infliction of emotional distress, nor is the court persuaded by the distinction he attempts to draw with regards to the December 2, 2021 incident. As Brown confirmed at the hearing, the FAC alleges that the December 2, 2021 incident amounted to a rape in that Berber allegedly penetrated Brown's anus.

Berber also argues that allegations that he acted within the scope of his employment are "100% incompatible" with the claim that his conduct was "extreme or outrageous." Berber's Reply at 4; *see also* Berber's Mot. at 9. He contends that conduct within the course and scope of one's employment might be negligent, but such conduct cannot be outrageous and extreme. Berber's Mot. at 9. Again, Berber cites no authority for this proposition.

Taken as true, Brown's allegations of sexual harassment and sexual battery sufficiently state a claim for intentional infliction of emotional distress against Berber at the pleading stage.

### 2. Motion to Strike and to Require a More Definite Statement

Berber moves to strike Brown's third claim for the "intentional tort of sexual assault, sexual battery and sexual harassment." *See* Fed. R. Civ. P. 12(f). Berber claims that, as pleaded,

19

the FAC asserts three separate claims with distinct elements. *See* Berber's Mot. at 9-10. If Brown wishes to proceed with one or of more these claims, Berber asks that Brown be instructed to plead each claim separately pursuant to Rule 12(e). Brown does not respond to Berber's arguments in his opposition brief; he argues instead that the FAC pleads sufficient facts in support of his claims for "sexual assault and battery" and "sexual harassment." At the hearing, Brown clarified that he only asserts claims for sexual assault and sexual battery.

The court agrees with Berber that the FAC's third claim appears to assert three separate claims for sexual assault, sexual battery, and sexual harassment. The Rule 12(e) motion is therefore granted. If Brown chooses to file a second amended complaint, he must number each tort claim as a separate claim for relief instead of lumping them together under a single claim. Because the court grants Berber's motion for a more definite statement, the motion to strike is denied as moot.

### IV. CONCLUSION

For the foregoing reasons, APL's motion to dismiss is granted in part and denied in part. Brown's claim for sex discrimination under Title VII is dismissed with leave to amend. Berber's motion to dismiss is granted in part and denied in part. Brown's claim for negligent infliction of emotional distress against Berber is dismissed.

Berber's motion for a more definite statement is granted; his motion to strike is denied as moot. Brown shall file a second amended complaint in accordance with this order within 14 days of the date of the order.

**IT IS SO ORDERED.**

Dated: August 1, 2023

Donna M. Ryu
Chief Magistrate Judge